UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| OCEANWAY MENTAL HEALTH AGENCY, INC., *et al.*, | ) ) ) | |
| Plaintiffs | ) | |
| v. | ) ) | No. 2:17-CV-00424-LEW |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) ) | |
| Defendant | ) | |

# DECISION AND ORDER

Plaintiffs Oceanway Mental Health Agency, Inc., and Oceanway Manor, Inc., bring this diversity action to obtain a declaratory judgment that Defendant Philadelphia Indemnity Insurance Company owes a duty to defend and indemnify Plaintiffs against administrative proceedings initiated against Plaintiffs by the Maine Department of Health and Human Services. Compl. (ECF No. 1). The parties have asked the Court to resolve their dispute in the context of competing motions for summary judgment based on stipulated facts. Pl.'s Mot. for Summ. J. (ECF No. 27); Def.'s Mot. for Summ. J. (ECF No. 25). For reasons explained herein, Plaintiffs' motion is denied and Defendant's motion is granted.

## FACTS

Plaintiffs Oceanway Mental Health Agency ("OWMHA") and Oceanway Manor ("OWM") are mental health services agencies that contracted with the Department of

Health and Human Services to provide mental health services to individuals qualified to receive services through programs administered by the Department. Compl. ¶¶ 13, 16, 17, 20, 21. Pursuant to the agreement, Plaintiffs agreed to bill for services and the Department agreed to pay for services under the auspices of the Medicaid or Mainecare program. *Id.* ¶¶ 14, 18; Joint Stipulation of Facts ¶¶ 1-2 (ECF No. 26).

*The Underlying Medicaid Controversy*

Medicaid billing procedures are demanding and subject to regulatory oversight. Along these lines, the parties stipulate to the existence of a regulatory scheme that required Plaintiffs to comply with several billing and record keeping requirements and authorized the Department to monitor compliance and to impose sanctions, recover overpayments, and apply penalties for noncompliance with Medicaid requirements. Joint Stipulation ¶¶ 4-6, 12-14, 19. Additionally, if there is a credible allegation of fraud, the Department was authorized to suspend payments pending an investigation. *Id.* ¶¶ 7-8. Examples of fraud include:

> "Billing for services, supplies, or equipment that were not rendered to, or used for, MaineCare members";
>
> "Claiming of costs for non-covered or non-chargeable services, supplies or equipment disguised as covered items"; and
>
> "Material misrepresentations of dates and descriptions of services rendered, or of the identity of the member or the individual who rendered the services."

*Id.* ¶ 9 (citing MaineCare Benefits Manual 1.22-1).

In June 2016, the Department's Program Integrity Unit conducted a site visit to investigate Plaintiff OWMHA's compliance based on its receipt of complaints about

2

OWMHA's billing submissions and records. *Id.* ¶¶ 45-47. On October 19, 2016, the Program Integrity Unit sent a Notice of Violation to OWMHA. *Id.* ¶ 48 & Ex. E. The review involved over 5,000 claims paid to OWMHA between April 1, 2015, and April 30, 2016. *Id.* ¶ 50. As the result of its investigation, the Program Integrity Unit found certain violations and took remedial action against OWMHA, including imposition of a penalty for inadequate records for some claims, as well as a requirement that OWMHA return the entirety of certain "overpayments or payments made in error," to the tune of $437,796.37. *Id.* ¶¶ 51-53.

On November 15, 2016, the Program Integrity Unit sent a Notice of Violation to OWM. *Id.* ¶ 54; Joint Stipulation Ex. F. The Unit found certain violations, including bills submitted for services provided by employees lacking qualifications and bills submitted for services when a member was out of the facility and not using the facility's support services. *Id.* ¶¶ 55-56. As a result of these violations, the Program Integrity Unit imposed similar recoupment penalties as a sanction for billing violations, in the amount of $25,614.57. *Id.* ¶¶ 57-58.

By letters dated October 26, 2016, the Program Integrity Unit advised OWMHA and OWM that it would temporarily suspend all future MaineCare payments based on a determination that there existed a credible allegation of fraud. *Id.* ¶¶ 59, 62 & Exs. G, H. Then, in December 2016, the Department's Office of MaineCare Services notified OWMHA and OWM that it was terminating their MaineCare provider agreements. *Id.* ¶¶ 65, 67 & Exs. I, J.

*Plaintiffs' Request for Coverage*

In or around October 2016, Plaintiffs provided notice of loss to Defendant. *Id.* ¶ 69. Defendant denied the claim, stating that there was no coverage under the Policies because, *inter alia*, there was no claim "involving bodily injury, property damage or personal and advertising injury caused by an occurrence" per the insuring agreements set forth in the CGL coverage form, and that "intentional acts by an insured are excluded as are any claims related to breach of contract." Defendant also stated that with respect to the professional liability coverage form there was "no professional incident" and that certain exclusions applied, including "exclusions related to damages that are expected and intended; damages that arise out of a failure to collect or pay money, arising out of an insured gaining any personal profit or advantage to which they are not legally entitled and damages arising out of any acts, errors or omissions of a managerial or administrative nature." *Id.* ¶ 70 & Exs. K, L.

By letter dated March 29, 2017, counsel for Plaintiffs requested "reimbursement and coverage for the costs of defending OWMHA … pursuant to the Human Services Organization Professional Liability Coverage in the above-referenced policies." *Id.* ¶ 72, Ex. M. In October 2017, Plaintiffs filed a two-count complaint against Defendant, seeking declaratory relief and monetary damages with respect to "claims asserted by [the Department] in the administrative proceedings initiated against OWMHA and OWM by Notices dated October 26, 2016." *Id.* ¶ 74.

*The Coverage Forms*

In April 2016, Defendant issued "commercial lines" policies to Plaintiffs with a policy period of April 16, 2016 to April 16, 2017 (collectively the "Policy"). *Id.* ¶ 22. The Policy includes a Human Services Organization Professional Liability Coverage Form. *Id.* ¶ 23 & Ex. C.

The "insuring agreement" under the professional liability coverage form provides that Defendant: (a) will pay only "those sums that the insured becomes legally obligated to pay as 'damages' arising out of a 'professional incident' in the course of performing professional services for, or on behalf of, [the] human services organization to which this insurance applies"; and (b) has the "duty to defend any 'suit' seeking those 'damages.'" *Id.*

The professional liability coverage form defines the terms appearing in quotation marks. Thus:

> "Damages" means a monetary … Judgment … Award; or … Settlement, but does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple portion of any damages;
> …
> "Professional incident" means any actual or alleged negligent … Act … Error; or … Omission in the actual rendering of professional services to others, including counseling services, in your capacity as a human services organization;
> …
> "Suit" means a civil proceeding in which 'damages' are claimed and to which this insurance applies.

*Id.* ¶¶ 27-31.

The coverage form also sets forth certain coverage "exclusions." *Id.* ¶ 32. Specifically, it states:

> This insurance does not apply to "damages":
>
> 1. Expected or intended from the standpoint of the insured.
>
> 2. For any actual or alleged breach of contract or agreement. …
> …
> 18. Arising out of an insured gaining any personal profit or advantage to which they are not legally entitled.
> …
> 20. Arising out of any criminal, dishonest, fraudulent or malicious act or omission. …
> …
> 22. Arising out of acts, errors or omissions of a managerial or administrative nature.
> …

*Id.* ¶ 33.

In addition to the professional liability coverage form, the Policy includes a Commercial General Liability Coverage Form (the "CGL form"). *Id.* ¶ 34 & Ex. D. The "insuring agreement" under the CGL form provides that Defendant: (a) will pay only "those sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' or 'property damage' to which this insurance applies"; and (b) has the "duty to defend any 'suit' seeking those 'damages.'" *Id.* ¶ 36. The CGL form provides that the insurance "applies to … 'property damage' only if … [t]he 'property damage' is caused by an 'occurrence' …." *Id.* ¶ 37. The defined terms are as follows:

> "Property damage" means … "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."
> …
> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> …

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

*Id.* ¶¶ 39-42.

The CGL form sets forth certain coverage "exclusions." *Id.* ¶ 43. Specifically, the form states:

> This insurance does not apply to: ….
>
> a. … "property damage" expected or intended from the standpoint of the insured. …
> b. … "property damage" for which the insured is obligated to pay damages by the reason of assumption of liability in a contract or agreement. …
> …
> j. … "Property damage" to … [p]roperty you own … including any costs or expenses incurred … for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to … or damage to another's property;
> …
> m. … "Property damage" to … property that has not been physically injured, arising out of … [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. …
> …

*Id.* ¶ 44.

## DISCUSSION

"Maine law on the duty to defend is well established. Courts apply a comparison test between 'two documents: the insurance policy and the underlying complaint against the insured.'" *Zurich Am. Ins. Co. v. Elec. Maine LLC*, 325 F. Supp. 3d 198, 199-200 (D. Me. 2018) (quoting *Harlor v. Amica Mut. Ins. Co.*, 150 A.3d 793, 797 (Me. 2016)).

> An insurer has a duty to defend an insured when the complaint, read broadly in conjunction with the policy, reveals the existence of any legal or factual basis that could potentially be developed at trial and result in an award of damages covered by the terms of the policy. Although courts do not

7

> speculate about causes of action that were not stated[,] ... our rules of notice pleading favor a broad construction of the duty to defend. The facts alleged in the complaint need not make out a claim that specifically and unequivocally falls within the coverage. Rather, where the events giving rise to the complaint may be shown at trial to fall within the policy's coverage, an insurer must provide the policyholder with a defense. We have explained the comparison test and its low threshold for triggering an insurer's duty to defend, as a test and a threshold designed to discourage mini-trials on the issue of the duty to defend.

*Harlor*, 150 A.3d at 797-98 (quotation marks and citations omitted). As explained in *Harlor*, I must consider whether the liabilities generated by the administrative proceedings could be shown at trial to be covered under one or both of the coverage forms. Additionally, if the coverage question is ambiguous, I am to resolve doubts in favor of a duty to defend, and in considering whether language is ambiguous, I must ask whether it "is reasonably susceptible of different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought." *Cox v. Commonwealth Land Title Ins. Co.*, 59 A.3d 1280, 1283 (Me. 2013).

The comparison test, as uniquely applied by Maine courts, reveals an uneven intellectual luge ride that might lead one to conclude that, in practice, there is no limiting principle to an insurer's duty to defend. So long as there exists a policy and a complaint, surely too must there be a duty to defend, found somewhere in the *aether*. I understand that the rule as articulated sets this low bar by design, but for there to be a rule with any meaning there also must be a bar. Fortunately, the epistemological conundrum somewhat inherent in the comparison test is less a problem in cases involving coverage language that defines key terms and exclusions that reinforce and refine the terms of coverage, in plain language. This is such a case.

Defendant argues the Department's administrative proceedings against Plaintiffs do not give rise to the sort of liability covered under either the CGL form or the professional liability form because there is no "suit" for purposes of either coverage, there are no "damages" and no "professional incident" for purposes of the professional liability coverage, and there is no "property damage" or "occurrence" for purposes of the CGL coverage. Additionally, Defendant argues coverage would in any event be ruled out by specific exclusions, as well as by a public policy that "does not allow an entity to insure itself against the risk of being ordered to return money or property that it wrongfully acquired." Def.'s Motion 15, citing, *inter alia*, *New Life Brokerage Servs. v. Cal-Surance Assocs.*, 334 F.3d 112, 114-15 (1st Cir. 2003).

The thrust of Plaintiffs' motion for summary judgment and their opposition to Defendant's motion is that the underlying administrative matters trigger Defendant's duty to defend under the professional liability form because the Department's notices state that the Department imposed "a recoupment," which Plaintiffs argue is a form of damages, Pl.'s Mot. at 2-3, and because the Department based the imposition of the recoupment/sanction on, inter alia, shortcomings in Plaintiffs' delivery of services, Pl.'s Opposition at 3-4.

**A.     CGL Coverage**

Plaintiffs have abandoned any claim to coverage under the CGL coverage form. Moreover, it is plain that the administrative action undertaken by the Department does not expose Plaintiffs to liability based on an occurrence of personal injury or property damage, a basic prerequisite to coverage under the CGL coverage form.

9

## B. Professional Liability Coverage

Coverage under the professional liability form is triggered by a suit for damages arising out of a professional incident in the course of performing professional services. My discussion focuses on the term damages, which is essential to Plaintiffs' claim. According to Plaintiffs, because the Department stated in its notices that its sanctions required a "recoupment" of payments made to Plaintiffs, the underlying liability involves "damages." Plaintiffs cite *School Union No. 37 v. United National Insurance Company*, 617 F.3d 554, 563 (1st Cir. 2010), in which the First Circuit held that "compensatory equitable relief in the form of reimbursement," is a specie of damages. *Id.* at 3.

In *School Union* the term damages was not defined in the policy – an Educator's Liability Policy – and the policy also expressly covered another form of compensatory remedy generally understood to be equitable in nature (backpay). *Id.* at 562. In light of these facts, the First Circuit reasoned that the scope of the damages term was ambiguous and that the insurance company must indemnify the school union against a family's claim under the Individuals with Disabilities Education Act for reimbursement of the expenses of private education that should have been born by the school union. *Id.* at 562-63.

Here, in contrast, the damages term is defined to not include fines, sanctions, and penalties. While an ordinary person might wonder, in the absence of a definition, whether the scope of the term "damages" includes "recoupment," he or she would readily understand that the administrative proceedings seeking recoupment against Plaintiffs involve "fines, sanctions, and penalties" based on alleged violations of Medicaid billing

10

standards.  Moreover, the definition is reinforced with exclusionary language that clearly encompasses Plaintiffs' "liability" to the Department: i.e., the exclusion of coverage for damages for any actual or alleged breach of contract or agreement, or arising out of acts, errors or omissions of a managerial or administrative nature.

Thus, Plaintiffs' attempt to bring the administrative proceedings within the defined meaning of the term damages fails.  Because this is dispositive of Plaintiffs' claim, I do not address the parties' other arguments concerning the scope of coverage under the professional liability coverage form, or the public policy argument.

## CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 25) is **GRANTED**. Plaintiffs' Motion for Summary Judgment (ECF No. 27) is **DENIED**.

**SO ORDERED.**

**Dated this 23rd day of January, 2019.**

                                                       /s/ LANCE E. WALKER
                                                     **U.S. DISTRICT JUDGE**